UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

EDWARD STEFFEN and                           )
MARSHA STEFFEN,                              )
     Plaintiffs                            )
                                             )
     vs.                                   )
                                             )
VIKING CORPORATION,                          )       CIVIL ACTION NO. 04-10592RBC
     Defendant/Third Party Plaintiff       )
                                             )
     vs.                                   )
                                             )
HILLSIDE MACHINE, INC.,                      )
     Third Party Defendant                 )
                                             )
                                             )

## THIRD PARTY DEFENDANT, HILLSIDE MACHINE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Third Party Defendant Hillside Machine, Inc. hereby submits this memorandum of in

support of its Motion for Summary Judgment on Count I of the Third Party Complaint asserted

against it by Defendant/Third Party Plaintiff Viking Corporation.[1]


## II.     STATEMENT OF UNDISPUTED FACTS

Hillside hereby submits the following statement of undisputed facts pursuant to L.R.

56.1.

    1      The Complaint filed by Plaintiffs Edward and Marsha Steffen ("the Complaint") alleges negligence and breach of warranty against Defendant/Third Party Plaintiff Viking Corporation ("Viking").  See the Complaint filed with the Court.

    2.     Plaintiffs seek damages for injuries arising out of an accident allegedly involving Plaintiff Edward Steffen's operation of a Washer manufactured by Viking ("the

---

[1] The Third Party Complaint of Viking Corporation contains only one count, Count I.

Washer") on December 2, 2002 ("the Accident").  <u>See</u> the Complaint filed with the Court.

3.  Viking has filed a Third Party Complaint against Hillside ("the Third Party Complaint") seeking contractual indemnification from Hillside for the claims made in the Complaint.  <u>See</u> the Third Party Complaint filed with the Court.

4.  On or about May 11, 1992, Paul B. Renzella, the president and owner of Hillside placed the order for the Washer with John Zanetti of AMS Equipment Sales. Hillside ordered the Washer with a sludge evaporator oven ("the Oven").  <u>See</u> Affidavit of Paul B. Renzella at ¶ 2, an electronically signed copy of which is attached hereto as <u>Exhibit A</u>.

5.  Hillside did not draw up any plans for the Washer and relied solely on Viking to design and manufacture the Washer pursuant to the requested specifications contained in the May 11, 1992 order.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 3, <u>Exhibit A</u>.

6.  Prior to placing the order for the Washer, Hillside had no written or oral communications with anyone at Viking.  Hillside placed the order for the Washer after reviewing a Viking catalog and consulting with John Zanetti.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 4, <u>Exhibit A</u>.

7.  Prior to the Washer, Hillside had never bought any product from Viking.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 5, <u>Exhibit A</u>.

8.  After placing the order of May 11, 1992, Hillside received a confirming facsimile from Gus Enegren of Viking dated June 1, 1992.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 6, <u>Exhibit A</u>.

9.  The total purchase price for the Washer was $12,210.35 as set forth in Viking Invoice # 29783.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 7, <u>Exhibit A</u>.

10. Hillside paid an additional $1,251.64 charge for the shipping and crating of the Washer as set forth in Viking Invoice # 0055.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 8, <u>Exhibit A</u>.

11. In September of 1992, the Washer was delivered to Hillside fully assembled.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 9, <u>Exhibit A</u>.

12. Upon delivery of the Washer, Hillside noticed that the manual of the Washer warned against using caustic cleaning solutions in the Washer.  Paul B. Renzella called Viking and spoke to Gus Enegren about this warning.  Gus Enegren told Paul B. Renzella that the warning was there due to the potential danger of an operator of the Washer whose skin would be exposed to such a strong cleaning agent.  Paul B. Renzella  told Gus Enegren that Hillside had used caustic solutions in the past without a problem and intended to do so with the Washer.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 10, <u>Exhibit A</u>.  <u>See</u> a copy the deposition transcript of Paul B. Renzella at 37-38, relevant portions of which are attached hereto as <u>Exhibit B</u>.  <u>See</u> a copy the deposition transcript of Gus Enegren at 123-124, relevant portions of which are attached hereto as <u>Exhibit C</u>.

13.    Hillside stopped using caustic solutions in the Washer after about five years, sometime in the late 1990s. See deposition transcript of Paul B. Renzella at 56-58, Exhibit B.

14.    Hillside hired a plumber and an electrician to assist with the installation of the Washer. See Affidavit of Paul B. Renzella at ¶ 11, Exhibit A.

15.    The Boston Gas Company inspected the Washer after installation and informed Hillside that the Washer was not properly approved for use in Massachusetts. See Affidavit of Paul B. Renzella at ¶ 12, Exhibit A.

16.    In order to legally operate the Washer in Massachusetts, additional work had to be done to the Washer. However, no modifications to the Oven were done prior to the Accident. See Affidavit of Paul B. Renzella at ¶ 13 Exhibit A; deposition transcript of Paul B. Renzella at 64, Exhibit B.

17.    On October 14, 1992 attorney John J. Todisco on behalf of Hillside wrote a letter to Viking detailing the additional worked needed to be done for the Washer to meet American Gas Association or Underwriters Laboratory approval. See Affidavit of Paul B. Renzella at ¶ 14, Exhibit A.

18.    Hillside received a letter dated October 19, 1992 from Gus Enegren of Viking thanking Hillside for the purchase of the Washer. See Affidavit of Paul B. Renzella at ¶ 15, Exhibit A.

19.    On November 17, 1992 John Zanetti submitted an application for approval of use of the Washer in Massachusetts. See Affidavit of Paul B. Renzella at ¶ 16, Exhibit A.

20.    After approval of the Washer, Hillside continued to experience problems with the Washer, which Paul Renzella of Hillside communicated to Gus Enegren of Viking. However, Hillside never had problems with the Oven. See Affidavit of Paul B. Renzella at ¶ 17, Exhibit A; deposition transcript of Paul B. Renzella at 64, Exhibit B.

21.    Gus Enegren of Viking took notes regarding conversations he had with Paul Renzella by use of a contact management software ("the Enegren Phone Notes"). See deposition of Gus Enegren at 76-77, Exhibit C. Copies of the Enegren Phone Notes are attached hereto as Exhibit D.[2]

22.    The Enegren Phone Note of July 22, 1993 states as follows in its entirety:

Called today saying firetube is leaking and has had nothing but probs. "What can we do to get going again". I suggested we exchg m/c. He will consider o'nite.

See Exhibit D.

---

[2] All of the Enegren Phone Notes produced by Viking are attached hereto as Exhibit D. However, they appear to be incomplete as evidenced by the July 28, 1993 Enegren Phone Note, which begins with the term "(Cont)."

23.    The Enegren Phone Note of July 28, 1993 states as follows in its entirety:

(Cont) and cost me so much money in lost business and down time". We began asking for the complete list of defects so we could effect a correction last February but Paul was always "too busy"!

See Exhibit D.

24.    The Enegren Phone Note of August 2, 1993 states as follows in its entirety:

Called today and said got things going again and is considering now how to deal with the machine.  Not sure if wants $ back, replacement, or repairs. . . W/C us.

See Exhibit D.

25.    The Enegren Phone Note of  August 11, 1993  states as follows in its entirety:

Paul called bitching again about down time and costs etc. Said has t/t his atty who said "Kill him". Paul said he'd be happy just to get his $ back and would sign a release fm liability for warranty or future damages. Told him to get me a

(Cont) release fm his atty and I would consider the release and suggestion together

See Exhibit D.

26.    Paul B. Renzella discussed on the telephone with Gus Enegren the options to resolve Hillside's difficulties with the Washer.  Mr. Renzella and Mr. Enegren agreed upon a refund of the purchase price of the Washer ($12,210.35) by Viking in exchange for a release of all claims of Hillside against Viking.  See Affidavit of Paul B. Renzella at ¶ 18, Exhibit A.

27.    One of the primary reasons Viking claims it sought a release from Hillside was the use of caustic cleaning solution in the Washer.  See deposition of Gus Enegren at 55, Exhibit C.

28.    Hillside instructed its attorney, Mark Favaloro, to draft a release of all Hillside's claims against Viking.  Mr. Favaloro forwarded the proposed release to Gus Enegren of Viking by letter dated August 13, 1993.  See Affidavit of Paul B. Renzella at ¶ 19, Exhibit A.

29.    Gus Enegren informed Paul Renzella by telephone that the release as written by Attorney Favaloro was acceptable.  See Affidavit of Paul B. Renzella at ¶ 20, Exhibit A; deposition of Gus Enegren at 111-112, Exhibit C.

30.    By letter dated September 7, 1993, Hillside received a check made out for the amount of $12,210.35 from Viking.  See Affidavit of Paul B. Renzella at ¶ 21, Exhibit A.

31.     The Enegren Phone Note of September 9, 1993 states as follows in its entirety:

        Asked if rcvd ck and sent release by fedex: Rcvd ck y'day. Will
        fax release in am and mail original signature

32.     On September 10, 1993 Paul B. Renzella of Hillside signed the release as drafted
        by Attorney Favaloro ("the Release"). <u>See</u> Affidavit of Paul B. Renzella at ¶ 22,
        <u>Exhibit A</u>.

33.     The Release states as follows:

        For consideration received in the sum of $12,210.35, I, Paul B.
        Renzella, Hillside Automotive Machine, Inc., of 1302 Eastern
        Avenue, Malden, Massachusetts, hereby release Viking
        Corporation of 6501 W. Irving, Wichita, Kansas, from any and all
        claims including warranty claims, arising out of the purchase of a
        36" x 72" Jet Washer with gas heat, 220 v/3ph 15HP, purchased by
        me from the said Viking Corporation on or about August 4, 1992.

        A copy of the Release is attached hereto as <u>Exhibit E</u>.

34.     Paul B. Renzella of Hillside understood the Release to release all claims that
        Hillside had against Viking due to the problems Hillside had experienced with the
        Washer.  Hillside did not intend it to have any further effect.  <u>See</u> Affidavit of
        Paul B. Renzella at ¶ 23, <u>Exhibit A</u>.

35.     At the time of the Accident, Edward Steffen was an employee of Hillside and
        collected workers' compensation benefits as a result of the Accident. <u>See</u> a copy
        the deposition transcript of Edward Steffen at 12 and 262, relevant portions of
        which are attached hereto as <u>Exhibit F</u>.

36.     Plaintiff Edward Steffen alleges that the Accident occurred when he opened the
        door of the Oven.  <u>See</u> deposition of Edward Steffen, <u>Exhibit F</u> at 71 and 78.

37.     Paul Renzella was at Hillside at the time of the Accident.  Paul Renzella heard an
        explosion-like boom and subsequently saw Edward Steffen on fire. Deposition
        transcript of Paul B. Renzella at 61, <u>Exhibit B</u>.

38.     The Supplemental Answers to Interrogatories of Plaintiff Edward Steffen
        identifies D. Robert Holt as its liability expert and states that Mr. Holt will offer
        an opinion, which states in part as follows:

        It is expected that D. Robert Holt will testify that the washer did
        not have an adequate interlock guard, which was feasible at the
        time of manufacture and sale.  Evidence will be offered that Viking
        Corporation failed to identify the hazards associated with the use
        of the evaporator[3] on the washer.  Among the hazards were thermal
        and/or fire.  Testing would have disclosed the existence of the
        hazards.  The hazards were present during the use of the evaporator

---

[3] This memorandum uses the term "the Oven" for the sludge oven evaporator of the Washer.

to change sludge into a solid waste product which occurred by baking the sludge in a hot environment where there was a low oxygen environment. The potential for fire and explosion were present. Fire and explosion potentially result when opening the evaporator resulting in sudden exposure of air to the low oxygen environment. The defendant, Viking Corporation failed to eliminate the hazard during the design process of building the evaporator. The defendant, failed to guard against the hazard through the use of an interlock guard. The defendant, Viking Corporation failed to warn against the hazard in company literature, including the operator's manual, and/or on the machine.

See a copy of The Supplemental Answers to Interrogatories of Plaintiff Edward Steffen, which is attached hereto as Exhibit G.

III.    **STANDARD OF REVIEW**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1 Cir., 1999). After the moving party has met its burden, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." Michelson, 167 F.3d at 720.

A genuine issue is one "that a reasonable jury could return a verdict for the nonmoving party", and a material fact is one "that might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Accordingly, not every genuine factual conflict necessitates a trial, and "[i]t is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that

the materiality hurdle is cleared." Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 448 (1st

Cir.1996).  Furthermore, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon
> motion, against a party who fails to make a showing sufficient to establish the existence
> of an element essential to that party's case, and on which that party will bear the burden
> of proof at trial

Pasco v. Potter, 214 F. Supp. 2d 183, 186 (D.Mass.2002) (quoting Celotex Corporation v.

Catrett, 477 U.S. 317, 322 (1986)).

## IV.    ARGUMENT

Hillside is entitled to summary judgment on Count I of the Third Party Complaint as a

matter of law.  The Third Party Complaint alleges that the Release in conjunction with a "special

relationship" between Hillside and Viking creates an obligation for Hillside to indemnify Viking

for the claims asserted by Plaintiffs Edward and Marsha Steffen in the Complaint.  See the Third

Party Complaint at ¶ 14.   As further set forth below, there are insufficient legal and factual bases

giving rise to an obligation of Hillside to indemnify Viking for the claims made in the

Complaint.   By its plain terms, the Release does not provide for express indemnification.

Additionally, Viking cannot prevail on a claim for implied contractual indemnification.

Although the Massachusetts Supreme Judicial Court has examined the validity of claims

for implied contractual indemnification for injuries suffered by employee against an employer

who has paid workers' compensation benefits, it has not ruled that such claims are enforceable.

Furthermore, even if this Court were inclined to extend the existing law of implied contractual

indemnification, Viking cannot show the requisite factors needed to establish a right to implied

contractual indemnification.

A.    **THE RELEASE DOES NOT EXPRESSLY PROVIDE FOR INDEMNIFICATION.**

The Third Party Complaint's count for contractual indemnity relies upon the Release of

September 10, 1993.   The Release in its entirety provides as follows:

> For consideration received in the sum of $12,210.35, I, Paul B.
> Renzella, Hillside Automotive Machine, Inc., of 1302 Eastern
> Avenue, Malden, Massachusetts, hereby release Viking
> Corporation of 6501 W. Irving, Wichita, Kansas, from any and all
> claims including warranty claims, arising out of the purchase of a
> 36" x 72" Jet Washer with gas heat, 220 v/3ph 15HP, purchased by
> me from the said Viking Corporation on or about August 4, 1992.

See the Release, Exhibit E.

An indemnity provision should be interpreted by giving its terms their "ordinary and

plain meaning."   See Samos Imex Corp. v. Nextel Communications, Inc., 20 F. Supp. 2d 248,

251 (D. Mass. 1998).  The ordinary and plain meaning of the Release is that Hillside released

Viking from claims Hillside had against Viking concerning the Washer.  Furthermore, this was

the intent of Hillside when Paul B. Renzella signed the Release.  See Affidavit of Paul B.

Renzella at ¶ 23, Exhibit A.  Accordingly, the Release does not expressly provide for

indemnification of Viking by Hillside for third party claims, such as the one asserted by the

Plaintiffs in the Complaint, and the only potentially viable cause of action of Viking against

Hillside is one for implied contractual indemnity.

B.    **VIKING IS NOT ENTITLED TO IMPLIED CONTRACTUAL INDEMNIFICATION.**

1.    **MASSACHUSETTS HAS YET TO ALLOW IMPLIED CONTRACTUAL INDEMNITY AGAINST AN EMPLOYER WHO HAS PAID WORKERS' COMPENSATION BENEFITS AND SUCH AN EXPANSION OF THE LAW SHOULD BE LEFT TO THE LEGISLATURE.**

Hillside was the employer of Plaintiff Edward Steffen and paid workers' compensation benefits to him as a result of the Accident. See deposition transcript of Edward Steffen at 12 and 262, Exhibit F. Since Plaintiff Edward Steffen did not reserve his common law rights against Hillside, the provisions of the Massachusetts workers' compensation statutory framework provide immunity to Hillside for claims at common law. See Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 181 (1989) (citing M.G.L. ch.152, §§ 23, 24). Accordingly, "any right of a third-party tortfeasor to recover indemnity from an employer, who has paid workmen's compensation benefits to an injured employee, must stem, if at all, from an express or implied contract of indemnity or from an obligation implied from the relationship of the parties." Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983)(citing Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524, 526-527 (1978)).

Although the Massachusetts Supreme Judicial Court has a number of times noted the possibility of implied contractual indemnification by an employer in favor of a third-party tortfeasor for injuries suffered by a covered employee, it has never ruled that such a claim is a viable cause of action. See Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 182 (1989) ("Assuming without deciding that we would recognize a right to indemnification from an employer based on an implied agreement, we conclude that there is no such implied agreement here."); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 39 n.2 (1983) ("Whether we would recognize such an implied contractual obligation, we leave to another day."); H. P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 77 (1976) ("Assuming, arguendo, that Ford's theory of implied contractual indemnification states a valid cause of action, an issue expressly left unanswered by this court in Stewart v. Roy Bros., 358 Mass. 446, 458 (1970)"). In all of these cases, the Supreme Judicial Court found that the factual bases for such a claim were lacking.

Although some of the above cited cases only noted that the court did not have to decide whether to adopt this cause of action to render an opinion, others criticized such an extension of liability against an employer and cited law from other jurisdictions requiring express indemnification language.   The opinion of Larkin v. Ralph O. Porter, Inc., 405 Mass. 179 (1989) noted in an extensive footnote that:

> Courts of several jurisdictions have refused to allow the exclusivity provisions of their workers' compensation statutes to be bypassed by an implied agreement by the employer to indemnify. Rather, they require an express agreement by the employer. [citations omitted]  In one case, we ourselves have said that to hold an employer liable to indemnify a third party is "a radical departure from the reasonable expectation of the parties, [which] is unwarranted in the absence of a clear expression in the contract." New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734, 736 (1980).

Id. at 182 n.2.  As quoted above, the opinion of New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734 (1980) refused to adopt implied contractual indemnity and insisted on "a clear expression [of such an intention] in the contract." Id. at 736.   New Bedford Gas also cited cases from other jurisdictions and noted that when indemnification by an employer of third parties has been allowed, "the language of indemnity has been similarly explicit." Id. at 737 n.2.

As set forth above, the Supreme Judicial Court of Massachusetts has refrained from extending implied contractual indemnity allowing a third-party tortfeasor to recover from an employer who has paid workers' compensation benefits to an injured employee.  Indeed, the opinion of Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524 (1978) noted that the extension of such a right with its concomitant policy considerations is "best resolved in the Legislature . . . ."

See id. at 527.  In light of the restraint exercised by Massachusetts Supreme Judicial Court in

deference to the legislature, this Court should refrain from extending the law of implied

contractual indemnity in Massachusetts to allow Viking to recover form Hillside in this action.

Refraining from such an extension of the law would entitle Hillside to summary judgment in its

favor as a matter of law.  However, even if the Court were inclined to extend the law of

Massachusetts, the requisite factors needed for implied contractual indemnification are absent

under the facts of the case at bar.


### 2.  EXPRESS INDEMNIFICATION LANGAUGE IS REQUIRED FOR A PARTY TO BE INDEMNIFIED AGAINST ITS OWN NEGLIGENCE.

The Complaint alleges, *inter alia*, negligent design, manufacture, testing, and inspection

of the Washer by Viking.  See the Complaint at ¶ 4.  The Complaint also alleges negligence

against Viking by failing to give adequate and proper instructions and warnings regarding the

Washer.  Id.  As the manufacturer of the Washer, Viking's potential liability for these alleged

negligent acts will be due to its own acts and/or omissions, as opposed to those of Hillside.  It is

well established law in Massachusetts that only express language can provide indemnification in

favor of a negligent party.

In the context of a lessee seeking indemnification against a lessor, the court in Great

Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326 (1980) noted that:

> [a]n implied contract of indemnity such as involved
> here will not be considered as indemnifying a lessee
> against his own negligence. Only express language
> can create such indemnity.

Id. at 334 (citing Laskowski v. Manning, 325 Mass. 393, 398-399 (1950)).  This rule barring

indemnification in favor of a negligent party has since been cited in numerous opinions.  See

Rathbun v. Western Massachusetts Electric Co., 395 Mass. 361 (1985) ("The general rule is that

there must be express language creating an obligation to indemnify one against his own

negligence."); Croall v. Massachusetts Bay Transp. Authority, 26 Mass. App. Ct. 957, 958

(1988) ("Generally the obligation to indemnify another against its own negligence flows from

express language."); Kelly v. Dimeo, Inc., 31 Mass. App. Ct. 626, 628 (1991) ("[A] party may

not obtain indemnification for its own negligence under a theory of implied contractual

indemnity.")

　　　　Although there appears to be no authority on the extension of implied contractual

indemnity where the potential indemnitee seeks indemnity for its own breach of warranty, the

same principle barring indemnification of a negligent party should apply.  Since the Release does

not expressly provide for indemnification, Viking should be denied indemnity for the injuries to

the Plaintiffs caused by its acts and/or omissions, whether styled in negligence or breach of

warranty.  Accordingly, Hillside is entitled to summary judgment in its favor as a matter of law.

### 3.　　THERE ARE NEITHER UNIQUE SPECIAL FACTORS NOR A SPECIAL RELATIONSHIP BETWEEN VIKING AND HILLSIDE WARRANTING THE IMPOSITION OF IMPLIED CONTRACTUAL INDEMNIFICATION.

　　　　Viking cannot make the requisite factual showing of unique special factors or special

relationship between Viking and Hillside for Viking to recover based upon a theory of implied

contractual indemnification.   For to recover on such a theory, a party must show that there are

"unique special factors" that indicate the intention by party to indemnify another in the particular

situation or a "generally recognized special relationship" between the parties.  Araujo v. Woods

Hole, Martha's Vineyard, Nantucket S.S. Authority, 693 F.2d 1, 2 (1st Cir. 1982); see Fall River

Housing Authority v. H.V. Collins Co., 414 Mass. 10, 14 (1992) (citing Decker v. Black &

Decker Mfg. Co., 389 Mass. 35, 38-39 (1983)).

There are only two opinions applying Massachusetts law that have found such a right to

implied contractual indemnity,  Monadnock Display Fireworks, Inc. v. Andover, 388 Mass. 153

(1983) and Great Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326 (1980).  Both of these

cases are distinguishable from the current action.  In Monadnock the Supreme Judicial Court

held that a contractual agreement by the Town of Andover to provide police protection and

crowd control at a fireworks display implied an agreement by the town to indemnify the

fireworks company for damages paid to an injured spectator.  See Monadnock Display

Fireworks, Inc. v. Andover, 388 Mass. 153 (1983).  The minor spectator was injured after he

handled firework remnants, which he was able to obtain due to inadequate crowd control and

security.  Id. at 157.  The court found that indemnification for such a loss was in the

contemplation of the parties because there would "be little if any benefit" to the fireworks

company pursuant to the contract if there were no indemnification for such a claim.  Id. at 158.

In Great Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326 (1980) a lessor agreed to make

all outside repairs on a particular property, and  the agreement was construed as implying an

obligation on the part of the lessor to indemnify the lessee for damages arising from the failure to

make the promised repairs.  Id. at 331-332.  The court in  Great Atlantic & Pacific Tea Co. found

an implied obligation to indemnify based on the special relationship of a landlord and tenant.

See id. at 332-333 (citing the Restatement of (Second) of Property).  Both of these cases are

distinguishable from the case at bar.

Unlike the fireworks company in <u>Monadnock</u>, Viking received benefit from the Release without there being a right to indemnification for the claim brought by Plaintiffs Edward and Marsha Steffen.  Hillside had potential claims against Viking based upon problems it experienced with the Washer, including the Washer not being approved for use in Massachusetts, which it released.  <u>See</u> Affidavit of Paul B. Renzella at ¶ 23, <u>Exhibit A</u>.  Likewise, there is no "generally recognized special relationship" between Viking and Hillside such as landlord-tenant giving to implied contractual obligations as was present in <u>Great Atlantic & Pacific Tea Co.</u> Furthermore, in examining these two cases that found implied contractual indemnity, the Supreme Judicial Court subsequently noted that it has "inferred the existence of indemnity agreements *only when the terms of the contract themselves contemplated such indemnification*." <u>Larkin v. Ralph O. Porter, Inc.</u>, 405 Mass. 179, 184-185 (1989) (emphasis added).  There are no terms in the Release contemplating indemnification and accordingly, Viking is not entitled to implied contractual indemnification based upon the Release.

A case in a products liability context where the court found a basis for implied contractual indemnification is <u>Roy v. Star Chopper Co., Inc.</u>, 442 F. Supp. 1010 (R.I. 1977), aff'd 584 F.2d 1124 (1st Cir. 1978), <u>cert. denied</u>, 440 U.S. 916 (1979).  Although <u>Roy v. Star Chopper</u> applies Rhode Island law of indemnity, it sets forth the requisite showing of special factors needed to prevail on a claim for implied contractual indemnity in a products liability context.  A comparison between the facts of <u>Roy v. Star Chopper</u> and the present action reveal that the necessary facts present in <u>Roy v. Star Chopper</u> giving rise to an implied right to indemnification are absent in the current action.

<u>Roy v. Star Chopper</u> involved personal injuries suffered by a worker, while operating a machine without safety devices manufactured by Star Chopper, in the course of her employment

by Advanced Materials System, Inc. ("AMS").  In Roy v. Star Chopper the manufacturer

impleaded AMS for indemnity and alleged that it was the employer's conduct that caused the

employee's damages.  Id. at 1012.  The court noted that facts showed AMS to be a "co-

manufacturer" with Star Chopper, providing a basis for implied contractual indemnity.  Id. at

1020.  Based upon the facts as alleged by the manufacturer, the court found an adequate basis for

implied contractual indemnity to be decided by a jury and denied AMS' motion for summary

judgment.  The relevant facts are as follows.  First, the employer was "exclusively responsible"

for the design of the machine which caused the plaintiff's injuries; the employer submitted

detailed drawings.  Id. at 1020.  Second, an agent of the employer told the manufacturer that the

employer would add the safety features, which it failed to do.  Id.  Third, the employer was

responsible for the ultimate assembly of the relevant portion of the machine.  Id.   Accordingly,

the Court found that there were sufficient facts supporting a potential finding that AMS "took

sole responsibility for the design and assembly" of the machine.  Id.  Based upon these factors

and the special relationship it established between the parties, the court determined the

manufacturer could be entitled to indemnity to cover its liability after a jury trial and denied the

AMS' motion for summary judgment.  Id.  Additionally, the court noted that its holding "is

narrowly confined to the unusual allegations and evidence before us."  Id.

        The facts present in the current action, even when viewed in a light most favorable to

Viking, do not arise to the special relationship of co-manufacturers found by the court in Roy v.

Star Chopper.  Hillside did not draw up any plans for the Washer and relied solely on Viking to

design and manufacture the Washer pursuant to the requested specifications contained in the

May 11, 1992 order.  See Affidavit of Paul B. Renzella at ¶ 3, Exhibit A.  Additionally, the

Washer was delivered to Hillside fully assembled.  See Affidavit of Paul B. Renzella at ¶ 9,

Exhibit A.   Furthermore, although Hillside had to perform modifications to the Washer for

approval for use in Massachusetts, it never modified the Oven, which the Plaintiff Edward

Steffen claims caused the Accident.   See Affidavit of Paul B. Renzella at ¶ 13, Exhibit A;

deposition transcript of Paul B. Renzella at 64, Exhibit B; the Supplemental Answers to

Interrogatories of Plaintiff Edward Steffen, Exhibit G; deposition of Edward Steffen, Exhibit F at

71 and 78.   Since the undisputed facts of this action are insufficient to establish the existence of

the requisite special factors and/or special relationship between Viking and Hillside needed for

implied contractual indemnification, an essential element of Viking's claim, the Court should

grant summary judgment in favor of Hillside.  See Pasco v. Potter, 214 F. Supp. 2d 183, 186

(D.Mass.2002).


     **4.**     **THE PERSONAL INJURIES SUFFERED BY EDWARD STEFFEN WERE NOT SUFFICIENTLY FORESEEABLE DAMAGES TO BE INCLUDED IN THE SCOPE OF THE RELEASE.**


Even if this Court chooses to entertain the extension of implied contractual indemnity in

this action and finds requisite special factors, implied contractual indemnity will not be available

for the claims of Plaintiffs Edward and Marsha Steffen because such claims were not in the

contemplation of the Viking and Hillside when Hillside executed the Release.  Implied

contractual indemnification is only available if the damages being sought "were sufficiently

foreseeable by the parties" to be implied within the scope of the agreement.  See Great Atlantic

& Pacific Tea Co. v. Yanofsky, 380 Mass. 326, 333 (1980).

The Plaintiffs' theory in this case is that there was a fire and/or explosion involving the

Oven.  See The Supplemental Answers to Interrogatories of Plaintiff Edward Steffen, Exhibit G;

deposition of Edward Steffen, Exhibit F at 71 and 78.  Paul B. Renzella of Hillside intended the

Release to release all claims that Hillside had against Viking due to the problems Hillside had experienced with the Washer.  See Affidavit of Paul B. Renzella at ¶ 23, Exhibit A.  However, Hillside never had problems with the Oven.  See deposition transcript of Paul B. Renzella at 64, Exhibit B.   One of the primary reasons Viking claims it sought a release from Hillside was the use of caustic cleaning solution in the Washer.  See deposition of Gus Enegren at 55, Exhibit C. Gus Enegren testified that caustic cleaning was potentially dangerous to the operator of the Washer and that such solutions could cause leaks due to their highly corrosive nature.  See deposition of Gus Enegren at 54-55, Exhibit C.  Hillside stopped using caustic solutions in the Washer after about five years, sometime in the late 1990s, years before the Accident.  See deposition transcript of Paul B. Renzella at 56-58, Exhibit B.  Viking also claims it sought a release from Hillside due to potential modifications to the Washer.  See deposition of Gus Enegren at 136, Exhibit C.  No modifications to the Oven were done prior to the Accident.  See Affidavit of Paul B. Renzella at ¶ 13 Exhibit A.

The potential damages, which were being released by Hillside and which were foreseen by Viking and Hillside at the time of execution of the Release, were entirely unrelated to claims involving fire and explosion involving  the Oven.  As set forth above, Hillside intended the Release as releasing all claims it had experienced with the Washer, but Hillside never experienced any problems with the Oven.  Viking intended the Release to prevent future claims arising out of the use of caustic solutions and/or modifications to the Washer.  However, Hillside had stopped using caustic years before the Accident and it never performed any modifications to the Oven prior to the Accident.  Furthermore, no causal connection between the use of caustic solution and the Accident has been asserted by the Plaintiff or any other party.  See The Supplemental Answers to Interrogatories of Plaintiff Edward Steffen, Exhibit G.  Accordingly,

the claims of Plaintiffs Edward and Marsha Steffen arising out of an alleged explosion of the

Oven and resulting fire, were not contemplated by Viking and Hillside when Hillside executed

the Release, and are not recoverable in action for implied contractual indemnity.  See Samos

Imex Corp. v. Nextel Communications, Inc., 20 F. Supp. 2d 248, 251 (D. Mass. 1998); Great

Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326, 333 (1980).

There is no genuine issue of fact concerning the foreseeability of the nature of the

Plaintiffs' damages; Viking and Hillside did not contemplate such damages when they negotiated

the Release.  Since such foreseeability is an essential element of Viking's claim, Hillside is

entitled to summary judgment as matter of law.  See Pasco v. Potter, 214 F. Supp. 2d 183, 186

(D.Mass.2002).


**V.      CONCLUSION**

Upon the reasons and authorities cited above, Third Party Defendant Hillside Machine,

Inc. requests that this Court enter judgment in its favor as to all counts of the Third Party

Complaint of Viking Corporation.


> Respectfully submitted,
> Hillside Machine, Inc.
> By its attorneys,
>
>
> /s/ Kevin J. Fleming
> Christopher J. Sullivan – BBO # 548137
> Kevin J. Fleming – BBO # 637419
> Davis, White & Sullivan, LLC
> One Longfellow Place, Suite 3609
> Boston, MA  02114
> (617) 720-4060
> kfleming@daviswhite.com

Dated:  ___May 3, 2006_____

## CERTIFICATE OF SERVICE

I, Kevin J. Fleming, Esquire hereby certify that on this day I served a copy of the foregoing document by the ECF email system to counsel of record:


Robert P. Powers, Esq.
T. Dos Urbanski, Esq.
Melick, Porter & Shea, LLP
28 State Street
Boston, MA  02109

William J. Doyle, Esq.
Leavis and Rest, P.C.
83 Central Street
Boston, MA  02109


  /s/ Kevin J. Fleming_____
Kevin J. Fleming – BBO # 637419
Davis, White & Sullivan, LLC
One Longfellow Place, Suite 3609
Boston, MA  02114
(617) 720-4060
kfleming@daviswhite.com


Dated:  ___May 3, 2006_____