# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDWARD STEFFEN and MARSHA STEFFEN,<br>    Plaintiffs<br><br>vs.<br><br>VIKING CORPORATION,<br>    Defendant/Third Party Plaintiff<br><br>vs.<br><br>HILLSIDE MACHINE, INC.,<br>    Third Party Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 04-10592RBC |

## AFFIDAVIT OF PAUL B. RENZELLA

I, Paul B. Renzella, depose and state the following based on personal knowledge:

1. I am the president and owner of Hillside Machine, Incorporated ("Hillside"), the third-party defendant in the above captioned action.

2. On or about May 11, 1992, I placed an order for a Viking Corporation ('Viking") Waterblaster Washer ("the Washer") with John Zanetti of AMS Equipment Sales. I ordered the Washer with a sludge evaporator oven ("the Oven"). A copy of this order is attached hereto as Exhibit 1.

3. I did not draw up any plans for the Washer; I relied solely on Viking to design and manufacture the Washer pursuant to the requested specifications contained in the May 11, 1992 order.

4. Prior to placing this order, I had no written or oral communications with anyone at Viking. I placed the order for the Washer after reviewing a Viking catalog and consulting with John Zanetti.

5. Prior to the Washer, I had never bought any product from Viking.

6. After placing the order of May 11, 1992, I received a confirming facsimile letter from Gus Enegren of Viking dated June 1, 1992. A copy of this letter is attached hereto as Exhibit 2.

7. The total purchase price for the Washer was $12,210.35 as set forth in Viking Invoice # 29783. A copy of this invoice is attached hereto as Exhibit 3.

8. Hillside paid an additional $1,251.64 charge for the shipping and crating of the Washer as set forth in Viking Invoice # 0055. A copy of this invoice is attached hereto as <u>Exhibit 4</u>.

9. In September of 1992, the Washer was delivered to Hillside fully assembled.

10. Upon delivery of the Washer, I noticed that the manual of the Washer warned against using caustic cleaning solutions in the Washer. I called Viking and spoke to Gus Enegren about this warning. He told me that the warning was there due to the potential danger of an operator of the Washer whose skin would be exposed to such a strong cleaning agent. I told him that I had used caustic solutions in the past without a problem and intended to do so with the Washer. A copy of notes dated 9/22/02 recording this conversation is attached hereto as <u>Exhibit 5</u>.

11. I hired a plumber and an electrician to assist with the installation of the Washer.

12. The Boston Gas Company inspected the Washer after installation and informed me that the Washer was not properly approved for use in Massachusetts.

13. In order to legally operate the Washer in Massachusetts, additional work had to be done to the Washer. Neither I nor any anyone under my direction made any modifications to the Oven prior to the accident involving Edward Steffen.

14. On October 14, 1992 attorney John J. Todisco on behalf of Hillside wrote a letter to Viking detailing the additional worked needed to be done for the Washer to meet American Gas Association or Underwriters Laboratory approval. A copy of this letter is attached hereto as <u>Exhibit 6</u>.

15. I received a letter dated October 19, 1992 from Gus Enegren thanking Hillside for the purchase of the Washer. A copy of this letter is attached hereto as <u>Exhibit 7</u>.

16. On November 17, 1992 John Zanetti submitted an application for approval of use of the Washer in Massachusetts. A copy of this application without enclosures is attached hereto as <u>Exhibit 8</u>.

17. After approval of the Washer, I continued to experience problems with the Washer, which I communicated to Gus Enegren of Viking.

18. I discussed on the telephone with Gus Enegren the options to resolve my difficulties with the Washer. We agreed upon a refund of the purchase price of the Washer ($12,210.35) by Viking in exchange for a release of all claims of Hillside against Viking. I never discussed indemnification of Viking by Hillside or the potential of future personal injury claims with Gus Enegren .

19. I instructed Hillside's attorney, Mark Favaloro, to draft a release of all Hillside's claims against Viking. A copy of the August 13, 1993 letter from Mr. Favaloro to Gus Enegren enclosing a draft release is attached hereto as <u>Exhibit 9</u>.

20. Gus Enegren informed me by telephone that the release as written by Attorney Favaloro was acceptable.

21. By letter dated September 7, 1993, I received a check made out for the amount of $12, 210.35 from Viking. A copy of the letter sending this check is attached hereto as <u>Exhibit 10</u>.

22. On September 10, 1993 I signed the release as drafted by Attorney Favaloro. A copy of the signed release is attached hereto as <u>Exhibit 11</u>.

23. I understood the September 10, 1993 release to release all claims that Hillside had against Viking due to the problems Hillside had experienced with the Washer. I did not intend it to have any further effect.

Signed under the pains and penalties of perjury this __2nd__ day of May, 2006.


                                      /s/ Paul B. Renzella
                             Paul B. Renzella, President of Hillside Machine, Inc.