UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EDWARD STEFFEN and <br> MARSHA STEFFEN, <br>     Plaintiffs <br><br> v. <br><br> VIKING CORPORATION, <br>     Defendant and Third Party Plaintiff <br><br> v. <br><br> HILLSIDE MACHINE, INC. <br>     Third Party Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   C.A. NO. 04-10592-RBC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS, EDWARD STEFFEN AND MARSHA STEFFEN'S
OPPOSITION TO THE THIRD PARTY DEFENDANT,
<u>HILLSIDE MACHINE, INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiffs, Edward Steffen and Marsha Steffen oppose the motion of the third-party defendant, Hillside Machine, Inc. ("Hillside"), for summary judgement on the third-party complaint.  As discussed below, the evidence, when viewed in the light most favorable to Viking Corporation ("Viking"), is more than sufficient to support Viking's claim that Hillside is contractually obligated to indemnify Viking for the plaintiff's claims against it.  There are numerous material questions of fact which are in dispute, and the matter cannot appropriately be resolved at the summary judgment stage.

The plaintiffs, Edward Steffen and Marsha Steffen adopt and incorporate those argument previously set forth by the defendant/third party plaintiff, Viking Corporation.

**STANDARD OF REVIEW**

Summary judgment is rarely granted on the merits of an action alleging negligence. *Foley v. Matulewicz*, 17 Mass. App. Ct. 1004, 1005, 459 N.E. 2d 1262, 1263 (Mass. App. 1984). "It is well settled that 'Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial.'" *Peckham v. Ronrico Corp.*, 171 F. 2d 653 (1st Cir. 1949), *quoting Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S. Ct. 724 (1944). Summary judgment must be denied if there is "the slightest doubt as to the facts." *Arenas v. United States*, 322 U.S. 419, 434, 64 S. Ct. 1090 (1944). The moving party bears the burden of showing that there is no genuine issue of fact as to any of the issues raised even though it does not bear that burden at trial. *Berrios v. Perchik*, 20 Mass. App. Ct. 930, 933, 479 N.E. 2d 695, 696 (Mass. App. 1985).

**ARGUMENT**

A. **THE EXCLUSIVITY PROVISIONS OF THE WORKER'S COMPENSATION ACT DO NOT PRECLUDE A CLAIM FOR IMPLIED CONTRACTUAL INDEMNITY.**

Massachusetts recognizes that, in appropriate circumstances, an agreement to indemnify may be implied in a contract. *Monadnock Display Fireworks, Inc. v. Town of Andover*, 388 Mass. 153, 157-158, 445 N.E. 2d 1053, 1056-1057 (1983); *Great Atlantic and Pacific Tea Co., Inc. v. Yanofsky*, 380 Mass. 326, 331-332, 403 N.E. 2d, 370, 373-374 (1980). While the Massachusetts appellate courts have never been presented with a viable implied contractual indemnity claim against an employer, they have held that an employer may be liable to a third party for express contractual indemnity, notwithstanding the exclusivity provisions of the Workers' Compensation Act. *Whittle v. Pagani Bros. Constr. Co.*, 383 Mass. 796, 422 N.E. 2d

779 (1981); <u>Decker v. Black and Decker Manufacturing Co.</u>, 389 Mass. 35, 38, 449 N.E. 2d 641, 643 (1983). Moreover, they have acknowledged that the "majority position is that a third-party tortfeasor may recover indemnity from an employer. . . if the employer had expressly or impliedly contracted to indemnify the third party," <u>Liberty Mutual Ins. Co. v. Westerlind</u>, 374 Mass. 524, 526, 373 N.E. 2d 957, 959 (1978), and have assumed, without deciding, that a third party may assert a valid claim for implied contractual indemnity against an employer. <u>Larkin v. Ralph O. Porter, Inc.</u>, 405 Mass. 179, 182, 539 N.E. 2d 529, 531 (1989).

B.  **MATERIAL QUESTIONS OF FACT PRECLUDE THE ENTRY OF SUMMARY JUDGMENT ON VIKING'S CLAIM AGAINST HILLSIDE FOR IMPLIED CONTRACTUAL INDEMNITY.**

A claim for implied contractual indemnity requires the existence of "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety." <u>Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority</u>, 693 F. 2d 1, 2 (1st Cir. 1982). See also <u>Fall River Housing Authority v. H.V. Collins Co.</u>, 414 Mass. 10, 14, 604 N.E. 2d 1310, 1313 (1992); <u>Croall v. Mass. Bay Transportation Authority</u>, 26 Mass. App. Ct. 957, 959, 526 N.E. 2d 1320, 1322 (1988). Because the inquiry into the particular circumstances of the case is central to the analysis of such a claim, it is ill suited for resolution via a motion for summary judgment. This is especially true here, where the parties have raised conflicting allegations regarding the circumstances and discussions which led up to the agreement in question, and there is substantial evidence to support Viking's claim that the parties fully intended that Hillside would indemnify Viking.

A vital issue of disputed fact derives from the varying accounts of the telephone conversations between Paul Renzella (the owner of Hillside) and Gus Enegren (then the owner of Viking) regarding the use of caustic cleaning products in the washer. Both agree that the manual

for the Viking washer prohibited the use of caustic cleaners in the washer. (Hillside Exhibit "A" at ¶ 10, Viking Exhibit "1" at p. 54). In fact, Viking still continues to recommend against the use of caustic cleaning agents in its washers. (Viking Exhibit "2" at p. 43-44).

Hillside's use of caustic cleaner in the Viking washer was one of the reasons Viking asked for a release of liability and indemnification from Hillside. (Viking Exhibit "1" at p. 53). While Mr. Renzella would have this Court believe that Viking's concerns about caustic cleaning solutions were minimal and had nothing to do with the washer's operations, Mr. Enegren, seconded by Viking's current owner, Deron Lock, explained that Viking's concerns go directly to the integrity and successful operation of the product itself. The dispute is important because it addresses the knowledge each party brought to the negotiations for the "release" from any and all claims that concluded their contractual relationship, as well as the reasonable expectations that both Hillside and Viking brought to those negotiations. Therefore the differing accounts of the parties' discussion about the use of caustic cleaner raises questions of material fact sufficient to defeat summary judgment.

Additional evidence highlighting the unique special factors in the context of this case arises from Hillside's modifications of the Viking washer. Hillside stops short of claiming that it did not modify the washer, focusing instead on a claim that it never modified the evaporator chamber. (Hillside Exhibit "A" at ¶ 13). This assertion implies that the evaporator chamber is so self-contained that modification or misuse of other parts of the washer would have no effect on the evaporator chamber, yet Hillside has presented no evidence to support such a claim.

Viking learned of Hillside's modification of the washer in a letter from an attorney representing Hillside dated October 14, 1992. That letter discussed modifications Hillside made to the pipes in the manifold, a low water shut down, a water temperature gauge, and a friction

brake on the door.  (Hillside Exhibit "6"; Viking Exhibit "1" at p. 134-135).  Mr. Enegren spoke with Mr. Renzella about modifications to the washer and was told that Hillside would continue modifying the machine.  (Viking Exhibit "1" at p. 136).

In *Roy v. Star Chopper Co., Inc.* 442 F. Supp. 1010 (D.R.I. 1977), the District Court considered whether, under Massachusetts law, the manufacturer of a machine could implead the purchaser on a theory of implied contractual indemnity.  The purchaser's employee had been injured while using the machine, and had recovered worker's compensation benefits from his employer before filing suit against the manufacturer.  Because the purchaser had participated in the design of the machine, and had undertaken responsibility for the addition of safety devices, the manufacturer was allowed to proceed with the indemnity claim, despite the absence of an express indemnity provision in the contract of sale.  The Court explained that "the contractual indemnity claim exists independent of a duty owned to the employee."  *Id.* at 1018.  Relying on the majority rule in other jurisdictions, the Court concluded "that the Massachusetts Act grants the employer immunity from indemnity claims based solely on a non-contractual relationship as tortfeasors," but not against "express or implied obligations. . . based on an independent contractual relationship."  *Id.*  Because the relationship between the manufacturer and the purchaser was "more in the nature of co-manufacturers," the Court found that it was "sufficiently different from the manufacturer/purchaser relationships" in other cases to permit the indemnity claim to survive summary judgment.  *Id.* at 1020.

Hillside provided the specifications for the machine.  (Hillside Exhibit "A" at ¶ 3).  It also undertook to make modifications to it.  Hillside opted to disregard Viking's warnings and instructions, and to use caustic cleaners, which may have damaged the machine and/or contributed to the explosion.  On these facts alone, Viking and Hillside may be viewed as "co

manufacturers," and grounds for implied contractual indemnity exist for the reasons set forth in *Roy*. At minimum the dispute over the amount of input that Hillside had in the creation and modification of the washer, as it existed at the time of Mr. Steffen's injury, raises material issues of fact that preclude summary judgment.

## CONCLUSION

Wherefore, the plaintiffs, Edward Steffen and Marsha Steffen, respectfully request that the motion for summary judgment brought by third party defendant, Hillside Machine, Inc. be denied.

>                                  The plaintiffs,
>                                  By their attorney,
>
>
>                                   /s/ William J. Doyle, Jr.
>                                  William J. Doyle, Jr.
>                                  Leavis and Rest, P.C.
>                                  83 Central Street
>                                  Boston, MA  02109
>                                  (617) 742-1700
>                                  BBO #134240

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all counsel of record by first class mail on 5/26/06.

  /s/  William J. Doyle, Jr.