UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDWARD STEFFEN and | ) | |
| MARSHA STEFFEN, | ) | |
|     Plaintiffs | ) | |
| | ) | |
|     vs. | ) | |
| | ) | |
| VIKING CORPORATION, | ) | CIVIL ACTION NO. 04-10592RBC |
|     Defendant/Third Party Plaintiff | ) | |
| | ) | |
|     vs. | ) | |
| | ) | |
| HILLSIDE MACHINE, INC., | ) | |
|     Third Party Defendant | ) | |
| | ) | |
| | ) | |

**THIRD PARTY DEFENDANT HILLSIDE MACHINE, INC.'S REPLY TO THE
OPPOSITIONS OF VIKING CORPORATION AND EDWARD AND MARSHA
STEFFEN TO HILLSIDE'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Third Party Defendant Hillside Machine, Inc. ("Hillside") hereby submits this reply to the

Oppositions of Viking Corporation ("Viking") and Edward and Marsha Steffen filed in response

Hillside's Motion for Summary Judgment.

## II.    RESPONSE TO STATEMENT OF ADDITIONAL MATERIAL FACTS

Hillside hereby responds to Viking's statement of additional material facts as follows.

Hillside wishes to clarify the statement contained in additional fact number twelve.  Fact number

twelve states that modifications were made to the evaporator chamber door.  Hillside admits that

the only modification to the Oven[1] was the addition of a hasp and padlock to secure the Oven

---

[1] The term "the Oven" is used as defined in the Memorandum in Support of Hillside's Motion for Summary
Judgment and indicates the evaporator chamber referenced in Viking's additional statement of fact number twelve.

door after the Accident.[2]  See Enegren Deposition at 17:25, Exhibit 1 to Viking's Opposition;

Deposition of Paul Renzella at 68, attached hereto as Exhibit 1; Statement of Undisputed Fact

number sixteen.

Hillside denies the facts stated in Viking's additional material fact number nineteen,

which states that Gus Enegren of Viking "explained" to Paul Renzella that the scope of the

Release[3] as drafted by Attorney Favaloro included indemnification for "any other claims arising

out of the use of the machine."  See Affidavit of Paul Renzella at ¶ 18, Exhibit A.[4] Gus Enegren

testified as follows at his deposition:

> Q.    Do you remember telling Renzella after reviewing the release that
>         you wanted to add language to it or change it any way?
>
> A.    I don't recall.
>
> Q.    After reviewing the release, do you remember having any
>         conversations with Mr. Renzella about indemnification for future
>         accidents with the machine?
>
> A.    I do not recall that.

Gus Enegren deposition transcript at 112:16-19, Exhibit C.  Based on Mr. Enegren's testimony,

this alleged explanation must have occurred before the Release was drafted.  Accordingly, such

an "explanation" did not pertain to the final version of the Release as written.

Since neither Viking nor the Steffens controverted any of the facts set forth in the

Statement of Undisputed Facts contained in Hillside's Memorandum in Support of its Motion for

Summary Judgment, all the facts should be deemed admitted.

---

[2] The term "the Accident" is used as defined in the Memorandum in Support of Hillside's Motion for Summary Judgment.
[3]  The term "the Release" is used as defined in the Memorandum in Support of Hillside's Motion for Summary Judgment.
[4] Unless otherwise specified, all exhibits refer to exhibits to the Memorandum in Support of Hillside's Motion for Summary Judgment.

III.    **ARGUMENT**

A.    **IMPLIED CONTRACTUAL INDEMNITY AGAINST AN EMPLOYER WHO HAS PAID WORKERS' COMPENSATION BENEFITS HAS NEVER BEEN ALLOWED BY A MASSACHUSETTS COURT.**

Neither the Opposition of Viking nor Edward Steffen has cited to a single Massachusetts case allowing implied contractual indemnification by an employer in favor of a third-party tortfeasor for injuries suffered by a covered employee. Although Massachusetts has addressed this issue many times, it has never ruled that such a claim is a viable cause of action. See Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 182 (1989) ("Assuming without deciding that we would recognize a right to indemnification from an employer based on an implied agreement, we conclude that there is no such implied agreement here."); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 39  n.2 (1983) ("Whether we would recognize such an implied contractual obligation, we leave to another day."); H. P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 77 (1976) ("Assuming, arguendo, that Ford's theory of implied contractual indemnification states a valid cause of action, an issue expressly left unanswered by this court in Stewart v. Roy Bros., 358 Mass. 446, 458 (1970)"). In all of these cases, the Supreme Judicial Court found that the factual bases for such a claim were lacking. In its Memorandum in Support of its Motion for Summary Judgment, Hillside stated that the Massachusetts Supreme Judicial Court had "refrained from extending" implied contractual indemnification by an employer in favor of a third-party tortfeasor for injuries suffered by a covered employee. Viking makes an issue of such a characterization, but it is a non-dispositive issue concerning semantics.

Viking also criticizes Hillside for "its suggestion that express and implied contractual indemnity claims against an employer should be treated differently." However, courts have treated implied and contractual indemnity differently. As noted in Hillside's Memorandum in Support of its Summary Judgment, the Massachusetts Supreme Judicial Court has cited law from other jurisdictions requiring express indemnification language for an indemnity claim against an employer. The opinion of <u>Larkin v. Ralph O. Porter, Inc.</u>, 405 Mass. 179 (1989) noted in an extensive footnote that:

> Courts of several jurisdictions have refused to allow the exclusivity provisions of their workers' compensation statutes to be bypassed by an implied agreement by the employer to indemnify. Rather, they require an express agreement by the employer. [citations omitted] In one case, we ourselves have said that to hold an employer liable to indemnify a third party is "a radical departure from the reasonable expectation of the parties, [which] is unwarranted in the absence of a clear expression in the contract." <u>New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc.</u>, 380 Mass. 734, 736 (1980).

<u>Id.</u> at 182 n.2. <u>New Bedford Gas</u> also cited cases from other jurisdictions and noted that when indemnification by an employer of third parties has been allowed, "the language of indemnity has been similarly explicit." <u>Id.</u> at 737 n.2.

In its Opposition Viking also takes issue with Hillside's assertion that the Massachusetts Supreme Judicial Court in <u>Liberty Mut. Ins. Co. v. Westerlind</u>, 374 Mass. 524 (1978) noted that the extent of the barring of claims pursuant to Massachusetts workers' compensation law is an issue to be dealt with by the Legislature. Both Viking's Opposition and Hillside's Memorandum in Support of its Motion for Summary Judgment fail to cite the entire relevant quote. The relevant quote is as follows:

> Our decision denying Westerlind a right of contribution or
> indemnity is based on the present statutory schemes governing
> workmen's compensation and contribution. We are aware of the
> strong criticism of the rules that a third party may not recover
> contribution from an insured employer and that only in limited
> circumstances may a third party recover indemnification from an
> insured employer.  We also note that strong policy arguments exist
> on both sides of the issue whether a third party should have a right
> of recovery on the basis of contribution or indemnification.  Such
> conflicting policy considerations are best resolved in the
> Legislature where the resolution can be based on full consideration
> of the competing interests and the ramifications involved with any
> change of the legislative scheme of G. L. c. 152.

Id. at 527 (internal citations omitted).  Viking maintains that this language only encompasses

deference to the Legislature "for any further curtailment of the exclusivity provisions . . . ."

Such a position is not supported by the broad language quoted above.  Viking also

maintains that term "limited circumstances" above includes implied contractual indemnity.

However, the Court in Westerlind does not adopt implied contractual indemnity against an

employer who has paid workers' compensation benefits due to insufficient facts to support such

an implied obligation.  See id. at 527.   The broad language cited at length above generally stands

for the proposition that the scope of the exclusivity provision of the Massachusetts workers'

compensation framework should be decided by the Legislature.   Hillside's interpretation of the

language in Westerlind is consistent with that of this Court.  Judge Mazzone noted as follows in

the context of denying the allowance of a third party complaint based on implied contractual

indemnification:

> I am mindful of the Massachusetts Supreme Judicial Court's oft
> reiterated conviction that the conflicting policy considerations
> involved in allowing a third-party to recover indemnification from
> an insured employer "are best resolved in the Legislature where the

> resolution can be based on full consideration of the competing interests and the ramifications involved with any change of the legislative scheme of G.L. c. 152." <u>Decker v. Black & Decker Mfg. Co.</u>, supra, at 42, citing <u>Liberty Mutual Ins. Co. v. Westerlind</u>, supra, at 527 (1978).

<u>Audlee v. New England Tank Indus. of New Hampshire</u>, 1984 U.S. Dist. LEXIS 24463 (D. Mass. August 8, 1984).

Despite analyzing the issue in a number of decisions, the Massachusetts Supreme Judicial Court has never adopted implied contractual indemnification against an employer in favor of a third party tortfeasor.  Furthermore, the Massachusetts Supreme Judicial Court has favorably cited other jurisdictions that do not allow for implied contractual indemnity against an employer. <u>See</u> <u>Larkin v. Ralph O. Porter, Inc.</u>, 405 Mass. 179, 182 (1989); <u>New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc.</u>, 380 Mass. 734, 736-737 (1980).   In light of these opinions and the above quoted language contained in <u>Westerlind</u>  and <u>Audlee</u>, this Court should not be the first to formally establish a right to implied contractual indemnification in favor of a third party against an employer covered by the Massachusetts Workers' Compensation Act.

**B.     <u>THERE ARE NO GENUINE ISSUES OF MATERIAL FACT PREVENTING SUMMARY JUDGMENT IN FAVOR OF HILLSIDE.</u>**

Both the Oppositions of the Steffens and Viking claim that there are genuine issues of material fact precluding entry of summary judgment in favor of Hillside.  Specifically, these Oppositions maintain that there are issues of material fact concerning the requisite unique special factors needed to establish implied contractual indemnity.  Hillside maintains that there are no genuine issues of material fact and that even if the evidence is viewed in the light most favorable to Viking, there is an inadequate showing of unique special factors supporting implied

contractual indemnity.  Furthermore, Viking cannot establish that the injuries suffered by

Edward Steffen were foreseeable when Hillside executed the Release.  Accordingly, Hillside is

entitled to summary judgment as a matter of law.


      1.      **<u>Caustic Cleaner</u>**

There is no genuine issue of material fact concerning the use of caustic cleaner in the

Washer[5] by Hillside.  One of the primary reasons Viking claims it sought a release from Hillside

was the use of caustic cleaning solution in the Washer.  <u>See</u> deposition of Gus Enegren at 55,

<u>Exhibit C</u>.  Gus Enegren testified that caustic cleaning solutions were potentially dangerous to

the operator of the Washer and that such solutions could cause leaks in the Washer due to their

highly corrosive nature.  <u>See</u> deposition of Gus Enegren at 54-55, <u>Exhibit C</u>.  Neither party

disputes that shortly after purchasing the Washer Paul Renzella and Gus Enegren had a

conversation regarding the use of caustic in the Washer.  <u>See</u> Statement of Undisputed Facts at

18.  The exact substance of this conversation is not an issue of material fact.  <u>See</u> <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (noting that a material fact is one "that might

affect the outcome of the suit under governing law").

Furthermore, Hillside does not deny that it used caustic solutions in the Washer.

However, Hillside stopped using caustic solutions in the Washer after about five years, sometime

in the late 1990s, years before the Accident.  <u>See</u> deposition of Paul B. Renzella at 56-58, <u>Exhibit</u>

<u>B</u>.  Furthermore, no causal connection between the use of caustic solution and the Accident has

been supported by affidavit, deposition testimony, or answers to interrogatories.  <u>See</u> The

---

[5] The term "the Washer" is used as defined in the Memorandum in Support of Hillside's Motion for Summary
Judgment.

Supplemental Answers to Interrogatories of Plaintiff Edward Steffen, <u>Exhibit G</u>. There is no genuine issue of material fact concerning the use of caustic cleaning solution in the Washer.

### 2. Modifications To The Washer

There are no genuine issues of material fact concerning Hillside making modifications to the Washer. Hillside admits that it made modifications to the Washer, so that it could be used in Massachusetts. In order to legally operate the Washer in Massachusetts, additional work had to be done to the Washer. <u>See</u> Affidavit of Paul B. Renzella at ¶ 13, <u>Exhibit A</u>. Hillside informed Viking in writing that it would be making these modifications and received no response from Viking. <u>See</u> Statement of Undisputed Facts at ¶¶ 17-18. However, no modifications to the Oven were done prior to the Accident. <u>See</u> Affidavit of Paul B. Renzella at ¶ 13, <u>Exhibit A</u>; deposition transcript of Paul B. Renzella at 64, <u>Exhibit B</u>.

Both Oppositions of the Viking and the Plaintiffs attempt to analogize the facts of <u>Roy v. Star Chopper Co., Inc.</u>, 442 F. Supp. 1010 (R.I. 1977), aff'd 584 F.2d 1124 (1st Cir. 1978), <u>cert. denied</u>, 440 U.S. 916 (1979) with the facts of the current action. However, as already pointed out in the Memorandum in Support of Hillside's Motion for Summary Judgment the facts of the two cases are distinguishable.

<u>Roy v. Star Chopper</u> involved personal injuries suffered by a worker, while operating a machine without safety devices manufactured by Star Chopper, in the course of her employment by Advanced Materials System, Inc. ("AMS"). In <u>Roy v. Star Chopper</u> the manufacturer impleaded AMS for indemnity and alleged that it was the employer's conduct that caused the employee's damages. <u>Id.</u> at 1012. The court noted that facts showed AMS to be a "co-manufacturer" with Star Chopper, providing a basis for implied contractual indemnity. <u>Id.</u> at

1020.  Based upon the facts as alleged by the manufacturer, the court found an adequate basis for implied contractual indemnity to be decided by a jury and denied AMS' motion for summary judgment.

The relevant facts are as follows.  First, the employer was "exclusively responsible" for the design of the machine which caused the plaintiff's injuries; the employer submitted detailed drawings.  Id. at 1020.  Second, an agent of the employer told the manufacturer that the employer would add the safety features, which it failed to do.  Id.  Third, the employer was responsible for the ultimate assembly of the relevant portion of the machine.  Id.  Accordingly, the court found that there were sufficient facts supporting a potential finding that AMS "took sole responsibility for the design and assembly" of the machine.  Id.  Based upon these factors and the special relationship it established between the parties, the court determined the manufacturer could be entitled to indemnity to cover its liability after a jury trial and denied the AMS' motion for summary judgment.  Id.  Additionally, the court noted that its holding "is narrowly confined to the unusual allegations and evidence before us."  Id.

The facts present in the current action, even when viewed in a light most favorable to Viking, do not arise to the special relationship of co-manufacturers found by the court in Roy v. Star Chopper.  Hillside did not draw up any plans for the Washer and relied solely on Viking to design and manufacture the Washer pursuant to the requested specifications contained in the May 11, 1992 order.  See Affidavit of Paul B. Renzella at ¶ 3, Exhibit A.  Hillside ordered a 36" by 72" washer, which was constructed by Viking pursuant to its standard plans for such a washer.  See Enegren Deposition at 99, 115-116, Exhibit 1 to Viking's Opposition.  Although Hillside did provide specifications for the Washer, such specifications only involve the addition of options to the standard base plan of a washer.  See Affidavit of Paul B. Renzella at ¶ 4,

Exhibit A ; Enegren Deposition at 99, 115-116.    Additionally, the Washer was delivered to

Hillside fully assembled.  See Affidavit of Paul B. Renzella at ¶ 9, Exhibit A.   Furthermore,

although Hillside had to perform modifications to the Washer for approval for use in

Massachusetts, it never modified the Oven, which the Plaintiff Edward Steffen claims caused the

Accident.   See Affidavit of Paul B. Renzella at ¶ 13, Exhibit A;  deposition transcript of Paul B.

Renzella at 64, Exhibit B; the Supplemental Answers to Interrogatories of Plaintiff Edward

Steffen, Exhibit G; deposition of Edward Steffen, Exhibit F at 71 and 78.

Unlike the employer in Roy v. Star Chopper,  Hillside had no involvement with design,

manufacture, or assembly of the Washer.  Hillside only chose the options that it sought to add to

the base design of the Washer.  Hillside had to modify the Washer to use it in Massachusetts

because Viking had shipped the Washer to Hillside without obtaining the requisite approval for

use in Massachusetts.  Such modifications, which were necessary for the legal use of the Washer,

should not be considered a unique special factor giving a basis for implied contractual indemnity.

If the Court were to construe such needed modifications as a unique special factor, it would

create a perverse incentive for manufactures to intentionally ship products that were not legally

useable without modification.  In Roy v. Star Chopper the modifications to the subject machine,

namely the failing to install safety devices, directly contributed to the employee's injuries.  In the

current action, no causal connection between the modifications of the Washer and the Accident

has been supported by affidavit, deposition testimony, or answers to interrogatories.  See the

Supplemental Answers to Interrogatories of Plaintiff Edward Steffen, Exhibit G .  As the Third

Party Defendant in this action, it is not Hillside's burden to show no causal connection between

the modifications to the Washer and the Accident.  Hillside is entitled to summary judgment if it

can show that there is no evidence to support an essential element of Viking's case and on which

Viking will bear the burden of proof at trial.  See Pasco v. Potter, 214 F. Supp. 2d 183, 186

(D.Mass.2002) (citing Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986)).


   3.     **The Release**

Viking maintains the Release itself is a unique special factor supporting its claim for

implied contractual indemnity.  However, the Release was simply a refund for a product that a

customer was not happy with.  In its Opposition Viking maintains that without indemnification,

it gained no benefit from the Release.  However, Viking did receive a substantial benefit from

the Release.  Hillside had potential claims against Viking based upon problems it experienced

with the Washer, including the Washer not being approved for use in Massachusetts, which it

released.  See Affidavit of Paul B. Renzella at ¶ 23, Exhibit A.   Additionally, Hillside had a

claim for lost use of the Washer while it was sitting idle due to non-approval and its various

problems.

There is a single issue of fact concerning the Release, namely whether or not Gus

Enegren and Paul Renzella discussed indemnification.  Hillside denies the facts stated in

Viking's additional material fact number nineteen, which states that Gus Enegren of Viking

"explained" to Paul Renzella that the scope of the Release included indemnification for "any

other claims arising out of the use of the machine."  See Affidavit of Paul Renzella at ¶ 18,

Exhibit A.  Gus Enegren testified as follows at his deposition:

   Q.     Do you remember telling Renzella after reviewing the release that
          you wanted to add language to it or change it any way?

   A.     I don't recall.

   Q.     After reviewing the release, do you remember having any
          conversations with Mr. Renzella about indemnification for future
          accidents with the machine?

A.    I do not recall that.

<u>See</u> Gus Enegren deposition transcript at 112:16-19, <u>Exhibit C</u>.  Based on Mr. Enegren's testimony, this alleged explanation must have occurred before the Release was drafted. Accordingly, such an "explanation" did not pertain to the final version of the Release as written.

In the correspondence and telephone notes (written by Gus Enegren) concerning the Release, there is no mention of indemnification.  Furthermore, it is undisputed that the Release makes no mention of indemnification.  Even if indemnification were discussed by Gus Enegren and Paul Renzella, which Hillside denies, the final and agreed upon Release makes no reference to indemnification by claims from any party other than Hillside.  Viking and Gus Enegren had the opportunity to review the Release and suggest changes, but he did not suggest any changes or revisions.  At the time of the negotiations surrounding the Release, Viking had regular outside counsel that it used for its legal matters, but could not recall whether counsel reviewed the Release.  <u>See</u> Deposition of Enegren at 109-110, <u>Exhibit 1</u> to Viking's Opposition.  Additionally, Gus Enegren had been president of Viking for fifteen years and had previously reviewed contracts and other legal documents.  <u>See</u> Deposition of Enegren at 111, <u>Exhibit 1</u> to Viking's Opposition.  The Release was a product of bargaining between Viking and Hillside; it was not a contract of adhesion.  If Viking wanted indemnification, it should have insisted upon modifications to the Release.  Viking had the requisite sophistication and could have insisted upon express indemnification terms in the Release, but did not.  <u>See</u> <u>Audlee v. New England Tank Indus. of New Hampshire</u>, 1984 U.S. Dist. LEXIS 24463 (D. Mass. August 8, 1984) (denying the allowance of a third party complaint based on implied contractual indemnification

and noting that parties "are not unsophisticated entities, and could have sought express indemnification").

Whether or not Gus Enegren and Paul Renzella discussed indemnification prior to the agreeing upon a final version of the Release is a genuine issue, but is not a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (noting that a material fact is one "that might affect the outcome of the suit under governing law"). It is not an issue of material fact because even if such a conversation took place, it is insufficient to establish implied contractual indemnification. The Supreme Judicial Court has "inferred the existence of indemnity agreements *only when the terms of the contract themselves contemplated such indemnification*." Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 184-185 (1989) (emphasis added). However, there are no terms in the Release contemplating indemnification. It is simply a release of Hillside's claims against Viking. Furthermore, as already set forth above there are insufficient unique special factors to establish implied contractual indemnification.

**4.     The Personal Injuries Suffered By Edward Steffen Were Not Sufficiently Foreseeable Damages To Be Included In The Scope Of The Release.**

Even if this Court chooses to entertain the extension of implied contractual indemnity in this action and finds requisite special factors, implied contractual indemnity will not be available for the claims of Plaintiffs Edward and Marsha Steffen because such claims were not in the contemplation of the Viking and Hillside when Hillside executed the Release. Neither the Opposition of Viking nor the Steffens adequately addresses this argument previously set forth in Hillside's Memorandum in Support of its Motion for Summary Judgment. Implied contractual indemnification is only available if the damages being sought "were sufficiently foreseeable by

the parties" to be implied within the scope of the agreement.  See Great Atlantic & Pacific Tea

Co. v. Yanofsky, 380 Mass. 326, 333 (1980).

Viking's position is that the Release covers all personal injuries involving the Washer is

untenable and contrary to the case law.  The injury suffered must be foreseeable by the parties at

the time of execution of the subject contract and Great Atlantic & Pacific Tea Co. v. Yanofsky,

380 Mass. 326 (1980) provides a good example of the requisite foreseeability.  In Great Atlantic

& Pacific Tea Co. v. Yanofsky, 380 Mass. 326, 327-328 (1980) a lessor agreed to make all

outside repairs of the property, a supermarket.  A patron of the supermarket was injured after

slipping on a puddle of water attributable to a leak in the roof.  Id. at 328.  The lease was

construed as implying an obligation on the part of the lessor to indemnify the lessee for damages

arising from the failure to make the promised repairs.  Id. at 331-332.  The personal injuries of a

patron who slipped and fell due to the wet floor of the supermarket is a foreseeable injury due to

a leaky roof.  Id. at 333.  As stated by the Supreme Judicial Court:

> In the present case, the lessor knew at the times he renewed the
> lease that the lessee operated a store frequented by members of the
> general public, old and young, feeble and firm, who would be bent
> upon the task of shopping for groceries and other items.  He had
> shopped at the store himself on occasion. He knew that if the roof
> leaked, as it did on several occasions prior to the incident at issue,
> water was highly likely to fall on the floor of the leased store. He
> knew, or should have known as a matter of common sense, that
> such water posed a potential hazard of personal injury to unwary
> shoppers, or to store personnel. He could not reasonably expect to
> rely solely on extraordinary efforts by store employees to deflect
> the naturally foreseeable consequences of a failure to repair the
> leaky roof.  It was plainly foreseeable that more mischief could
> result from such a failure to repair than the mere inconvenience to
> the store manager of having to call the roofer himself.  We hold
> that there was sufficient evidence from which the jury could find
> that the injury to Mrs. Vahey was a reasonably foreseeable result
> of Yanofsky's failure to repair the roof.

Id. at 333.

In the current action Edward Steffen alleges he was burned when the Oven exploded. The potential damages, which were being released by Hillside and which were foreseen by Viking and Hillside at the time of execution of the Release, were entirely unrelated to claims involving fire and explosion involving the Oven. There is no evidence by affidavit, deposition testimony, or answers to interrogatories showing that the explosion of the Oven was a foreseeable damage contemplated by the parties. Hillside is entitled to summary judgment if it can show that there is no evidence to support an essential element of Viking's case and on which Viking will bear the burden of proof at trial. See Pasco v. Potter, 214 F. Supp. 2d 183, 186 (D.Mass.2002) (citing Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986)). There is no genuine issue of fact concerning the foreseeability of the nature of the Plaintiffs' damages; Viking and Hillside did not contemplate such damages when they negotiated the Release. Since such foreseeability is an essential element of Viking's claim, Hillside is entitled to summary judgment as matter of law. See Pasco v. Potter, 214 F. Supp. 2d 183, 186 (D. Mass. 2002).

## IV.  **CONCLUSION**

Upon the reasons and authorities cited above in addition to its previously filed memorandum, Third Party Defendant Hillside Machine, Inc. requests that this Court enter judgment in its favor as to all counts of the Third Party Complaint of Viking Corporation.

Respectfully submitted,
Hillside Machine, Inc.
By its attorneys,


/s/ Kevin J. Fleming
Christopher J. Sullivan – BBO # 548137
Kevin J. Fleming – BBO # 637419
Davis, White & Sullivan, LLC
One Longfellow Place, Suite 3609
Boston, MA  02114
(617) 720-4060
kfleming@daviswhite.com

Dated:  ___June 5, 2006_____

## CERTIFICATE OF SERVICE

I, Kevin J. Fleming, Esquire hereby certify that on this day I served a copy of the foregoing document by the ECF email system to counsel of record:

Robert P. Powers, Esq.
T. Dos Urbanski, Esq.
Melick, Porter & Shea, LLP
28 State Street
Boston, MA  02109

William J. Doyle, Esq.
Leavis and Rest, P.C.
83 Central Street
Boston, MA  02109

   /s/ Kevin J. Fleming
Kevin J. Fleming – BBO # 637419
Davis, White & Sullivan, LLC
One Longfellow Place, Suite 3609
Boston, MA  02114
(617) 720-4060
kfleming@daviswhite.com

Dated:   June 5, 2006