VOL. I
PAGES 1-105
EXHIBITS 1-19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10592-RBC

EDWARD STEFFEN AND MARSHA STEFFEN,
    Plaintiffs

vs.

VIKING CORPORATION
    Defendant

DEPOSITION OF PAUL B. RENZELLA, taken on behalf of the plaintiff, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Irma Widomski, a Registered Merit Reporter, and Certified Shorthand Reporter, No. 131593 in and for the Commonwealth of Massachusetts, at the offices of Leavis and Rest, P.C., 83 Central Street, Boston, Massachusetts, on Wednesday, September 15, 2004, commencing at 10:00 a.m.

BEACON HILL COURT REPORTING, INC.
44 Bayswater Street
Boston, Massachusetts 02128
(617) 569-8050

---

PRESENT:

LEAVIS AND REST, P.C.
    (by William J. Doyle, Esquire)
    83 Central Street
    Boston, Massachusetts 02109
    For the plaintiff

MELICK, PORTER & SHEA, LLP
    (by T. Dos Urbanski, Esquire)
    28 State Street
    Boston, Massachusetts 02109^
    For Viking Corporation

Law Offices of John J. Todisco, Jr.
    (by John J. Todisco, Jr. Esquire)
    110 Florence Street, Suite 202
    Malden, Massachusetts 02148
    For the witness and Hillside Automotive Machine

---

INDEX

| WITNESS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Paul B. Renzella | | | | |
| BY Mr. Doyle | 5 | | | |
| BY Mr. Urbanski | | 71 | | |

EXHIBITS

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 1 | 5 | Notice of deposition |
| 2 | 18 | Sales order |
| 3 | 22 | The Only Washing Equipment document |
| 4 | 22 | Operators Manual |
| 5 | 26 | Invoice 29783 |
| 6 | 30 | Invoice 29783 8/4/92 |
| 7A | 31 | Invoice 0055 -9/17/92 |
| 7B | 31 | National Carrier Shipping label |
| 8 | 41 | Handwritten notes |
| 9 | 42 | Letter 10/19/92 from Gus Enegren |
| 10 | 43 | Letter 10/14/92 Todisco to Viking |
| 11 | 44 | Letter 11/17/92, Zanetti to Commonwealth of Massachusetts |
| 12 | 44 | Bowen statements |
| 13 | 53 | Letter 8/13/92, Favaloro to Enegren |
| 14 | 53 | Letter 9/7/93 Viking to Renzella |
| 15A-C | 54 | Invoices of Viking |
| 16 | 56 | Gusher Pump invoice |
| 17 | 56 | Grainger Invoice |
| 18 | 58 | Zep documents |
| 19 | 58 | Material Safety Data Sheets, Zep |

Page 65

1  A. No.
2  Q. Any other fires with the machine?
3  A. No.
4  Q. Did you have the machine checked out after the
5     accident?
6  A. Yes.
7  Q. Who checked it out after the accident?
8  A. This place, Better Comfort System, they do,
9     they're right next door. They do industrial gas
10    furnaces and stuff like that, and safety
11    switches and air-conditioners, they do all that
12    type. They do a lot of industrial gas furnaces.
13 Q. Anything have to be changed or fixed on the
14    machine?
15 A. No. I think there was one switch, I think, a
16    high limit switch, I think, they replaced. They
17    went through all the safeties of the burner.
18    They checked all the safeties of the machine.
19    Everything was fine.
20 Q. Did you talk with any of the other coworkers at
21    Hillside Automotive about what they saw just
22    before the accident or just after the accident?
23 A. No. We were all talking about what happened,
24    ba-ba-ba. Nobody seen anything abnormal.

Page 66

1     Everything was normal.
2  Q. You ever talk with Ed Steffen about what
3     happened?
4  A. I never -- well, I don't remember when I went up
5     to the hospital if I said what happened. I know
6     he just remembers, I've heard him say he just
7     doesn't remember a thing. I remember him saying
8     that.
9  Q. And that's while he was in the hospital and you
10    were nearby?
11 A. Yes.
12 Q. Is the jet washer still at Hillside now?
13 A. Yes.
14 Q. You still use it?
15 A. Yes. Every day.
16 Q. Everything else being equal, if Ed Steffen
17    didn't have that accident, would he still have a
18    job at Hillside?
19 A. I would say so. He was with me for ten years
20    then. I would imagine so.
21 Q. Did he ever go back to Hillside for any reason?
22 A. I think he came back to visit.
23 Q. I think you mentioned that guys bring their own
24    small tools to work?

Page 67

1  A. I still have his tools. They're still there.
2  Q. It's two years since the accident?
3  A. All I can tell you, I still have his toolbox.
4     It's covered up in the corner. It's a big
5     toolbox. I think he lives in an apartment so he
6     really doesn't have a place for it. I would
7     imagine that's why. I'm sure he knows it's
8     there.
9  Q. If he wanted to get his tools, all he would have
10    to do is call you up?
11 A. Oh, yes. It's his tools.
12 Q. Did anyone come in to inspect the machine after
13    the accident other than the company next door,
14    the City of Malden or anyone else?
15 A. No. Nobody, no other inspectors, no.
16 Q. OSHA inspector or state inspector, city
17    inspector?
18 A. No.
19 Q. Did anyone from Viking Corporation ever come out
20    to look at the machine after the accident?
21 A. No. I'm sorry. Worker's Comp, you know, came
22    out.
23 Q. AIM Associated?
24 A. Yes. They came out.

Page 68

1  Q. A-I-M. They came out sometime after the
2     accident?
3  A. Yes. They told me they didn't want that
4     particular part of the machine being used
5     anymore, which was fine because we didn't use it
6     that much because of the other cleaning system.
7     So, they made me put a padlock on it.
8        They usually come around and check the
9     shop once a year and go through things. That
10    was one thing that they wanted me to do.
11 Q. Before the accident?
12 A. After the accident.
13 Q. But before the accident, were you still using
14    the oven chamber?
15 A. Yes.
16 Q. All the time or once in a while?
17 A. Once in a while. Like I said, we got that new
18    cleaning system, so that did a lot of the
19    cleaning.
20 Q. Now, this new cleaning system?
21 A. It's a total different. It's an oven. It cooks
22    all the parts and everything turns to ash.
23 Q. This is the new one?
24 A. Yes.